**JUDGE DANIELS**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**12 CV 4129**

------------------------------------------------------------X

OCCUPY WALL STREET, an unincorporated association by and through Christine Crowther and Diego Ibañez, as its *de facto* Treasurers, AMANDA ROSE HENK, MICHELE LEE HARDESTY, FRANCES MERCANTI-ANTHONY, JAIME TAYLOR, and ELIZABETH FAGIN

COMPLAINT

12 Civ. No.

JURY TRIAL DEMANDED

Plaintiffs,

-against-

ECF CASE



THE CITY OF NEW YORK, MICHAEL BLOOMBERG, in his official capacity as Mayor of the City of New York, RAYMOND KELLY, in his official capacity as Police Commissioner, JOHN DOHERTY, in his official capacity as Sanitation Commissioner, JOHN DOE and RICHARD ROE and other presently unidentified officials, employees and/or agents of the City of New York in their official and individual capacities

Defendants.

------------------------------------------------------------X

   Plaintiffs OCCUPY WALL STREET ("OWS") by and through Christine Crowther and Diego Ibañez, as its *de facto* treasurers, AMANDA ROSE HENK, MICHELE LEE HARDESTY, FRANCES MERCANTI-ANTHONY, JAIME TAYLOR and ELIZABETH FAGIN, by their attorneys, SIEGEL TEITELBAUM & EVANS, LLP, as and for their COMPLAINT against Defendants, allege the following:

### PRELIMINARY STATEMENT

   1. This is a declaratory judgment and civil rights action to vindicate Plaintiffs' rights under the First, Fourth and Fourteenth Amendments to the Constitution of the

1

United States, 42 U.S.C. § 1983, and the Constitution and laws of the State of New York. Plaintiffs were deprived of their federal and state constitutional and New York State common law rights when police officers of the New York Police Department ("NYPD") and employees of the New York City Department of Sanitation ("DSNY") (together "City Departments"), acting pursuant to a policy and on the authority of New York City Mayor Michael Bloomberg and under the direction of Commissioners Raymond Kelly and John Doherty, conducted a surprise night time raid of Zuccotti Park, a.k.a. "Liberty Park" (the "Park").

2.    As part of the raid, the City Departments seized and retained possession of personal property belonging to OWS, including at least approximately 3,600 books from OWS's People's Library ("People's Library" or the "Library"), as well as various Library furnishings, computers, and other electronic equipment ("Library furnishings and equipment"). Only 1,003 of the at least approximately 3,600 books that were seized were recovered; moreover, of the recovered books, 201 were so damaged while in the possession of the City of New York that they were made unusable. Thus, at least approximately 2,798 books were never returned or were damaged and made unusable. Almost all of the Library furnishings and equipment that were seized by Defendants were not returned or returned in an unusable condition. To this day, OWS has not been told by the City of New York what happened to the missing books and Library furnishings and equipment. Upon information and belief, the missing books were destroyed as part of the raid. Upon information and belief, the raid was authorized by Mayor Bloomberg and executed by John Doe and Richard Roe and others presently unknown to Plaintiffs ("John Doe and Richard Roe *et al.*") in their capacity as officials, employees and/or agents of the City Departments, except for the conduct related to Plaintiffs' request for punitive damages as more particularly set forth below.

## JURISDICTION AND VENUE

3. This action is brought pursuant to 42 U.S.C §§ 1983 and 1988, and the First, Fourth and Fourteenth Amendments to the Constitution of the United States. This Court has jurisdiction of the action pursuant to 28 U.S.C. §§ 1331, 1343(a)(3), and 1343(a)(4) as this is a civil action arising under the Constitution of the United States and the laws of the United States. This Court has jurisdiction to declare the rights of the parties and to grant all further relief deemed necessary and proper pursuant to 28 U.S.C. §§ 2201 and 2202. This Court has jurisdiction over the supplemental claims arising under New York State law pursuant to 28 U.S.C. § 1367(a).

4. Venue is proper for the United Stated District Court for the Southern District of New York pursuant to 28 U.S.C § 1391 (a), (b), and (c) because the claims arose in this district.

## PARTIES

5. Plaintiff OCCUPY WALL STREET is an unincorporated association. It brings this action by and through Christine Crowther and Diego Ibañez, as its *de facto* treasurers. Persons associated with OWS come from different backgrounds, including elderly and young people, those with college and graduate degrees and those without formal schooling, and those with jobs and those who were laid off and are otherwise unemployed. These people come from all racial and ethnic groups and many religions, including Christianity, Judaism and Islam.

6. A central tenet of OWS is that the growing income inequality in the United States is unjust, unacceptable, and must be rectified. OWS has petitioned the government to redress this grievance through demonstrations in New York City and throughout the country.

7. Plaintiffs MICHELE LEE HARDESTY, FRANCES MERCANTI-ANTHONY, JAIME TAYLOR, and ELIZABETH FAGIN are and were at all times relevant residents of the City of New York. Each is associated with OWS and the Library Working Group, and volunteered at the People's Library.

8. Plaintiff AMANDA ROSE HENK is a resident of Indiana. Plaintiff Henk travelled to New York City and participated in the OWS demonstration at the Park. She is associated with OWS and the Library Working Group, and volunteered at the People's Library.

9. Defendant CITY OF NEW YORK is a municipal entity created and authorized under the laws of the State of New York. It is authorized by law to maintain police and sanitation departments, which act as its agents in the areas of law enforcement and sanitation, respectively.

10. Defendant MICHAEL BLOOMBERG is the Mayor of the City of New York. The Mayor is the chief executive officer of New York City. As such, he is responsible for the actions and policies of the NYPD and SDNY, and the effectiveness and integrity of the City's government operation. Pursuant to the New York City Charter, he must establish and maintain such policies and procedures as are necessary and appropriate to accomplish this responsibility. He is sued in his official capacity.

11. Defendant RAYMOND KELLY is the NYPD's Commissioner. He is appointed by the Mayor and is the chief executive officer of the NYPD. Among other duties, Commissioner Kelly is responsible for the actions and policies of the NYPD, and for the execution of all the laws and the rules and regulations of the State, the City and the NYPD. He is sued in his official capacity.

12. Defendant JOHN DOHERTY is the New York City Sanitation Commissioner. He is appointed by the Mayor and is the head of the DSNY. Among other duties, Commissioner Doherty is responsible for the functions and operations of the City relating to the cleanliness of the streets and the disposal of waste, and for the execution of all laws, rules, and regulations pertaining to the DSNY. He is sued in his official capacity.

13. Defendants JOHN DOE and RICHARD ROE *et al.*, whose identities are presently unknown to Plaintiffs, are and were at all times officials, employees and/or agents of the City Departments. They are sued in their official capacities and, with respect to the claim for punitive damages, in their individual capacities.

14. Except as to the actions that form the basis for the claim for punitive damages as to JOHN DOE and RICHARD ROE *et al.*, at all times relevant, the individual defendants JOHN DOE and RICHARD ROE *et al.* were acting under color of state law in the course and scope of their duties and functions as officials, employees and/or agents of the City Departments, and otherwise performed and engaged in conduct incidental to the performance of their lawful functions in the course of their duties.

## STATEMENT OF FACTS

### Background

15. On September 17, 2011, as part of their effort to call attention to their cause, associates of OWS established an encampment in the Park, a privately owned public space in Manhattan's Financial District that is bounded by Trinity Place, Liberty Street, Broadway, and Cedar Street. Soon afterwards, OWS began receiving donations of books. On or about September 27 or 28, the General Assembly, OWS's governing body, established the Library Working Group to oversee the organization, development, and promotion of what has come to be called the People's Library.

16.   Prior to the protesters' eviction from the Park on November 15, 2011, which is described below, the People's Library was located in the northeast corner of the Park. The books were maintained on metal shelves and in plastic bins, and the Library's operation was overseen by trained librarians.

17.   By November 15, over 5,500 books had been donated to the People's Library, and on the night of the raid at least approximately 3,600 books were in the Library. The books were donated by individuals, publishers, and authors, some of whom autographed their books. The librarians catalogued all incoming donations. To indicate that a book belonged to OWS, the librarians wrote or stamped "Occupy Wall Street Library" or "OWSL" somewhere on each of the donated books. The Library contained books on a wide range of subjects, including economics, politics, and histories of resistance.  It also contained classics such as works by William Shakespeare and Fyodor Dostoevsky, and autobiographies of notable individuals, such as the autobiography of Andrew Carnegie and the Mayor's own autobiography, <u>Bloomberg on Bloomberg</u>.

18.   The Library accepted both new and used books. Upon information and belief, all books were in sufficiently good condition that they were readable, with the binding undisturbed and pages intact.

19.   The Library offered its books to both persons associated with OWS and the general public. Prior to the events of November 15, which are described below, the Library served as a forum for learning, the communication and exchange of ideas, and expressive activity more generally.

## The November 15th Raid and Retrieval of Property Taken on November 15th

20.   On November 15, 2011, at approximately 1 a.m., the NYPD arrived at the Park and began enforcing the City's policy by announcing with a bullhorn and written fliers that OWS protesters occupying the Park must immediately remove all property from the Park and leave the Park on a temporary basis so that it could be cleaned. OWS protesters were told they would be allowed to return when this work was complete. The NYPD further announced that property OWS protesters failed to remove would be removed by the City Departments and transported to a DSNY garage on 57th Street, where, with proper identification, it could be recovered.

21.   OWS protesters were warned that those who failed to leave the Park or interfered with efforts to remove property from the Park would be subject to arrest.

22.   Approximately forty five minutes later, at approximately 1:45 a.m., NYPD officers moved through the Park clearing protesters. DSNY workers followed, taking possession of all belongings that were left behind. Upon information and belief, DSNY workers filled 26 DSNY trucks with property they removed from the Park.

23.   When the NYPD announced that all property must be removed from the Park, an OWS protester and Library volunteer attempted to remove books from the People's Library. After he carried an arm full of books out of the Park, he attempted to return to the Park to remove additional books. However, police officers were barricading the Park and would not permit him to return to continue removing books.

24.   Upon information and belief, Mayor Bloomberg authorized and assumed ultimate responsibility for the raid.

25. Prior to the raid on November 15, no notice was given to OWS or its associates that all the Library books and Library furnishings and equipment would have to be removed from the Park.

26. Prior to seizing the books and Library furnishings and equipment, Defendants did not provide a hearing or any other pre-deprivation procedure.

27. Upon information and belief, no emergency situation existed at the Park at or about 1 a.m. on November 15.

28. The presence of the books in the Park on November 15 did not create an emergency condition that required the immediate removal of the books.

29. Prior to November 15, NYPD officers were continually monitoring the condition of the Park, and had the opportunity to observe the People's Library. Upon information and belief, members of the NYPD were aware that the Library contained many shelves and boxes of books. The NYPD knew or should have known that, under the circumstances on the night of the raid, it would not be possible to remove such a large quantity of books and Library furnishings and equipment within the time allotted by the Defendants.

30. On November 16, 2011, the day after the raid, Plaintiffs Elizabeth Fagin and Michele Lee Hardesty, both associated with OWS and volunteers at the People's Library, and three others went to the West 57th Street DSNY Garage to retrieve the books that were seized. They gave DSNY representatives a computer printout listing the Library's books. They retrieved some of the items that were OWS's property and marked as such. Representatives from the DSNY and the Mayor's Office told them to return on Friday, November 18, to retrieve the additional books and Library furnishings and equipment. On Friday November 18, Plaintiffs

Elizabeth Fagin and Michele Lee Hardesty and one other individual returned to the West 57th DSNY Garage to retrieve the additional books and Library furnishings and equipment.

31. Of the at least approximately 3,600 books that were seized on November 15, only 1,003 were recovered. Moreover, 201 of the recovered books were so damaged that they were unusable. Thus, at least approximately 2,798 books were never returned or were damaged and made unusable. Plaintiffs estimate the value of the approximately 2,798 missing books to be at least approximately $43,000.

32. Upon information and belief, in the course of conducting the November 15 raid, officials, employees and/or agents of the City Departments destroyed many of the books that were seized in the raid. John Doe and Richard Roe *et al.*'s actions in destroying, facilitating the destruction, or otherwise allowing the destruction of OWS's books constituted outrageous conduct, was reckless and showed a callous indifference to and willful disregard of Plaintiffs' federal and state protected rights.

33. In addition to the books, on November 15, Defendants seized the Library furnishings and equipment, which consisted of 6 computers, archival material, a "wifi" device, 24 metal shelves and numerous plastic bins that had contained Library books, 3 sets of wooden drawers, approximately 8 chairs and a large tent that housed the Library. Most of these furnishings and equipment were not returned or returned in a usable condition. Plaintiffs estimate the value of the Library furnishings and equipment to be at least approximately $4,000.

34. As a result of Defendants' conduct, the Library lost a substantial part of its collection and was rendered non-functional.

35. Defendants failed to train and supervise their officials, employees and agents, including John Doe and Richard Roe *et al.*, so as to prevent the seizure and destruction of

Plaintiffs' property, which resulted in the violation of the First, Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983, and the Constitution and laws of New York State.

36. Defendants' failure to train and supervise amounts to deliberate indifference to the rights of persons with whom Defendants came into contact, including Plaintiffs.

37. The deficiency in the training and supervision of Defendants John Doe and Richard Roe *et al.* was an actual cause of the deprivation of Plaintiffs' rights and injuries.

38. On February 9, 2012, a notice of claim was served on the Comptroller of the City of New York. At least 30 days have elapsed since service of such notice, and adjustment and/or payment has been neglected and/or refused.

39. In taking the actions described above, the Defendants were acting under color of state law as aforesaid.

## FIRST CLAIM FOR RELIEF

### (VIOLATION OF THE FOURTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES)

40. Plaintiffs repeat and reallege each and every allegation set forth above.

41. Defendants' seizure of OWS's Library books and Library furnishings and equipment constitutes an unreasonable seizure in violation of the Fourth Amendment to the Constitution of the United States and 42 U.S.C. § 1983. These actions were taken pursuant to a policy, and the decision to take such actions was made by high ranking officials of the City of New York.

42. Defendants' destruction and failure to return or return in a usable condition OWS's seized Library books and Library furnishings and equipment constitutes an

unreasonable seizure in violation of the Fourth Amendment to the Constitution of the United States and 42 U.S.C. § 1983. These actions were taken pursuant to a policy, and the decision to take such actions was made by high ranking officials of the City of New York.

## SECOND CLAIM FOR RELIEF

### (VIOLATION OF FOURTEENTH AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES)

43. Plaintiffs repeat and reallege each and every allegation set forth above.

44. Plaintiffs have a property right in the Library books and Library furnishings and equipment.

45. Defendants' actions in (i) failing to provide a hearing or any other pre-deprivation procedure prior to seizing the Library books and Library furnishings and equipment and/or (ii) permitting OWS's associates an unreasonably short deadline to vacate the Park with all OWS's possessions deprived OWS of its property without due process of law in violation of the Fourteenth Amendment to the Constitution of the United States and 42 U.S.C. § 1983. These actions were taken pursuant to a policy, and the decision to take such actions was made by high ranking officials of the City of New York.

46. Additionally, Defendants' actions in failing to return all of OWS's Library books and Library furnishings and equipment, or in failing to return the books and Library furnishings and equipment in a usable condition deprived Plaintiffs of their property without due process of law in violation of Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983.

## THIRD CLAIM FOR RELIEF

### (VIOLATION OF THE FIRST AMENDMENT TO THE CONSTITUTION OF THE UNITED STATES)

47. Plaintiffs repeat and reallege each and every allegation set forth above.

48. In seizing, destroying and/or not returning the Library's books, or not returning the books in a usable condition, Defendants destroyed OWS's forum for learning and the exchange of ideas, and otherwise interfered with the OWS's associates' ability to obtain the books.

49. The Library presented no danger to the Defendants or to the public that necessitated the removal and then destruction and/or failure to return the books, or failure to return the books in a usable condition. Defendants did not use the requisite care in dismantling the Library, taking possession of the Library's books, or in ensuring their return. Accordingly, Defendants acted with reckless and callous indifference to Plaintiffs' rights under the First Amendment to the Constitution of the United States and 42 U.S.C. § 1983.

## FOURTH CLAIM FOR RELIEF

### (INADEQUATE SUPERVISION AND TRAINING)

50. Plaintiffs repeat and reallege each and every allegation set forth above.

51. Defendants failed to train and supervise their officials, employees and agents, including John Doe and Richard Roe *et al.*, so as to prevent the seizure and destruction of Plaintiffs' property, which resulted in the violation of the First, Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983.

52. Defendants' failure to train and supervise amounts to deliberate indifference to the rights of persons with whom Defendants came into contact, including Plaintiffs.

53. The deficiency in the training and supervision of Defendants John Doe and Richard Roe *et al.* was an actual cause of the constitutional deprivations and injuries suffered by Plaintiffs.

## FIFTH CLAIM FOR RELIEF

### (VIOLATION OF ARTICLE 1, SECTION 8 OF THE NEW YORK CONSTITUTION)

54. Plaintiffs repeat and reallege each and every allegation set forth above.

55. Defendants violated Plaintiffs' rights under Article 1, Section 8 of the New York State Constitution.

## SIXTH CLAIM FOR RELIEF

### (VIOLATION OF ARTICLE 1, SECTION 12 OF THE NEW YORK CONSTITUTION)

56. Plaintiffs repeat and reallege each and every allegation set forth above.

57. Defendants violated Plaintiffs' rights under Article 1, Section 12 of the New York State Constitution.

## SEVENTH CLAIM FOR RELIEF

### (VIOLATION OF ARTICLE 1, SECTION 6 OF THE NEW YORK CONSTITUTION)

58. Plaintiffs repeat and reallege each and every allegation set forth above.

59. Defendants violated Plaintiffs' rights under Article 1, Section 6 of the New York State Constitution.

## EIGHTH CLAIM FOR RELIEF

### (CONVERSION)

60. Plaintiffs repeat and reallege each and every allegation set forth above.

61. The Plaintiffs have title and/or the right to possess OWS's Library books and Library furnishings and equipment. Defendants' actions in seizing the books and Library furnishings and equipment, and/or failing to return the books and Library furnishings and

13

equipment or failing to return them in a usable condition when Plaintiffs requested their return on November 16 and 18, 2011 constitutes conversion. Plaintiffs are damaged as a result of Defendants' actions.

62. Pursuant to 28 U.S.C. §1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

### NINTH CLAIM FOR RELIEF

### (REPLEVIN)

63. Plaintiffs repeat and reallege each and every allegation set forth above.

64. The Plaintiffs have title and/or the right to possess OWS's Library books and Library furnishings and equipment. Defendants' actions in seizing the books and Library furnishings and equipment , and/or failing to return them or failing to return them in a usable condition when Plaintiffs requested their return on November 16 and 18, 2011 is the basis for replevin relief.

65. Pursuant to 28 U.S.C. §1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

### TENTH CLAIM FOR RELIEF

### (NEGLIGENCE)

66. Plaintiffs repeat and reallege each and every allegation set forth above.

67. The damage, destruction and/or failure to return Plaintiffs' Library books and Library furnishings and equipment was forseeable and proximately caused by the negligence, gross negligence, carelessness and/or negligent omissions of Defendants or their officials, employees and/or agents.

68. As a result of the negligence, gross negligence, carelessness and/or negligent omissions of Defendants, their officials, employees and/or agents, Plaintiffs have sustained monetary damages.

69. Pursuant to 28 U.S.C. §1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## ELEVENTH CLAIM FOR RELIEF

## (NEGLIGENT SUPERVISION AND TRAINING)

70. Plaintiffs repeat and reallege each and every allegation set forth above.

71. The City of New York and its officials, employees and/or agents acting within the scope of their employment negligently supervised and trained the individual Defendants, who were unfit for the performance of their duties at the Park on November 15, 2011, thereby causing OWS to suffer injury, including monetary damages. Such injuries and damages were foreseeable.

72. Pursuant to 28 U.S.C. §1367, this Court has pendant or supplemental jurisdiction to hear and adjudicate such claims.

## DEMAND FOR JURY TRIAL

73. Plaintiffs demand trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiffs request the following relief:

1. A declaratory judgment that Defendants violated Plaintiffs' rights under the First, Fourth and Fourteenth Amendments to the Constitution of the United States and 42 U.S.C. § 1983, and Article I, Sections 6, 8, and 12 of the New York State Constitution.

2. Damages in the amount of at least approximately $47,000 against the City of New York and the individual defendants, jointly and severally, together with interest and costs.

3. Punitive damages in an amount of at least $1,000 against the individual defendants John Doe and Richard Roe *et al.* whose actions constituted outrageous conduct, were reckless, and showed a callous indifference to and willful disregard of Plaintiffs' rights as set forth above.

4. The cost of this action, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988.

5. Any further and different relief that this Court deems appropriate.

Dated: New York, New York
May 23, 2012

                        Yours, *etc.*

                        SIEGEL TEITELBAUM & EVANS, LLP

                        by: *Norman Siegel*
                        Norman Siegel (NS 6850)

                        by: *Herbert Teitelbaum*
                        Herbert Teitelbaum (HT 7762) by NS

Sharon Sprayregen*
260 Madison Avenue, 22nd Floor
New York, NY 10016
(212) 455-0300
nsiegel@stellp.com
hteitelbaum@stellp.com
ssprayregen@ stellp.com

*Not admitted in the Southern District of New York

*Attorneys for Plaintiffs*